UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

TRUSTEES OF THE PAVERS AND ROAD          :
BUILDERS DISTRICT COUNCIL WELFARE,       :
PENSION, and ANNUITY FUNDS AND THE       :          REPORT AND
TRUSTEES OF THE LOCAL 1010               :          RECOMMENDATION
APPRENTICESHIP, SKILL IMPROVEMENT,       :
AND TRAINING FUND,                       :          No. 21-CV-02518-CBA-JRC
                                         :
                 Plaintiffs,             :
                                         :
         -against-                       :
                                         :
ATLANTIC STEEL SOLUTIONS, LLC,           :
                                         :
                 Defendant.              :
                                         :
------------------------------------------------------------------x

JAMES R. CHO, United States Magistrate Judge:

Plaintiffs, Trustees of the Pavers and Road Builder District Council Welfare, Pension,

and Annuity Funds, and the Trustees of the Local 1010 Apprenticeship, Skill Improvement, and

Training Fund (collectively, the "Funds" or "plaintiffs"), bring this action pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145,

and Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

*See* Am. Compl. ¶ 1, Dkt. 9.  Plaintiffs seek to recover delinquent employer contributions, union

assessments, and dues check-offs from defendant Atlantic Steel Solutions, LLC ("defendant" or

"Atlantic Steel"), as well as accrued interest, liquidated damages, audit costs, attorney's fees,

costs, and post-judgment interest.  *Id*. ¶¶ 32, Wherefore Clause.  Upon plaintiffs' application and

in light of defendant's failure to appear in or otherwise defend this action, the Clerk of the Court

entered defendant's default on July 27, 2021.  Dkt. 14.  Plaintiffs now move for default judgment

against defendant.  *See generally* Mot. for Default J., Dkt. 15; Plaintiffs' Mem. in Supp. of Mot.

for Default J. ("Pls.' Mem."), Dkt. 20.

Currently pending before this Court, on a referral from the Honorable Carol Bagley Amon, is plaintiffs' motion for default judgment.  *See* Order Referring Motion (Sept. 2, 2021). For the reasons set forth below, this Court respectfully recommends granting default judgment on plaintiffs' ERISA and LMRA claims, granting plaintiffs' request for audit costs, attorney's fees and costs, but denying plaintiffs' request for other damages.  As discussed further below, this Court has identified a mistake with the underlying Audit Report that served as the basis for plaintiffs' damages calculations, along with other mistakes with their calculations.  This Court further recommends granting plaintiffs an opportunity to submit supplemental briefing on the issue of damages after they recalculate their damages.

## I.    Relevant Factual and Procedural Background

The following facts are drawn from plaintiffs' Amended Complaint and supporting declarations, *see* Dkts. 16-18, and are accepted as true for purposes of this motion.

The Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with Section 302(c) of the LMRA.  Am. Compl. ¶ 4. The Funds are employee benefit plans within the meaning of Section 3(3) of the ERISA and are administered in Whitestone, New York.  *Id*.  Defendant Atlantic Steel is a New Jersey corporation engaged in the construction business with its principal place of business in Paterson, New Jersey.  *Id*. ¶ 5.[1]

---

[1] Although the defendant does not reside within this district, venue is proper in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301 of the LMRA, 29 U.S.C. § 185(a), because the employee benefit plans are administered in Whitestone, New York, which is located in Queens.  *See* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered[.]"); 29 U.S.C. § 185(a) ("Suits [under this chapter] may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.").

On January 12, 2018, Atlantic Steel agreed to a Project Labor Agreement (the "PLA") covering construction work at the Jacob Riis Houses, located at 454 East 10th Street in New York City, for the period from January 1, 2015 through June 30, 2021 ("Covered Work"). *See* Declaration of Keith Loscalzo ("Loscalzo Decl."), Dkt. 16, ¶¶ 5-7; *see* Exs. A-C, Dkts. 16-1, 16-2, 16-3. Under the terms of the PLA, Atlantic Steel was obligated to pay contributions to the Funds, according to the rate schedules set forth therein, for all work performed by its covered employees. *See* Loscalzo Decl. ¶ 8; Ex. B ("PLA"), art. XI § 2(a), Dkt. 16-2 at ECF pages[2] 30-31. Through the PLA, Atlantic Steel also was bound to a collective bargaining agreement (the "CBA") with the Highway, Road  and Street Construction Laborers Local Union 1010 (the "Union"). *See* Loscalzo Decl. ¶ 9; PLA at ECF pages 84-88; *see also* Exs. D, E, Dkts. 16-4, 16-5; Am. Compl. ¶ 6. Under the CBA, Atlantic Steel was required to (1) pay contributions to the Funds according to the rate schedules set forth therein for all work performed by its employees within the trade and geographical jurisdictions of the Union no later than 35 days after the end of a month during which the hours were worked; (2) submit reports detailing the number of Covered Work hours performed by employees no later than 35 days after the end of a month during which the hours were worked; (3) pay specified dues check-offs and other contributions to the Union for each hour of Covered Work performed by Atlantic Steel employees; and (4) comply with payroll audits to confirm that it is complying with these obligations. *See* Loscalzo Decl. ¶¶ 14-19; Ex. D ("2015-18 CBA"), art. IX, Dkt. 16-4 at ECF pages 24-28; Ex. E ("2018-21 CBA")*,* art. IX, Dkt. 16-5 at ECF pages 25-29; Am. Compl. ¶¶ 7-11.

In addition, the CBA bound Atlantic Steel to all of the terms and conditions of the

---

[2] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF") system.

Agreements and Declarations of Trust (the "Trust Agreements").  *See* Am. Compl. ¶ 14; Loscalzo Decl. ¶ 15; 2015-18 CBA, art. IX § 1(b); 2018-21 CBA, art. IX § 1(b); Declaration of Joseph Montelle ("Montelle Decl."), Dkt. 17, ¶ 5.  The Trust Agreements, in turn, provide that in operating and administering the Fund, the Board of Trustees shall have the "complete discretion to interpret the [] Plan [] and to decide any matters arising thereunder in connection with the administration of the Plan" and may "establish rules and regulations for the administration and operation of the [] Plan."  Ex. F, art. VI § 1(D), (H), Dkt. 17-1, at ECF page 95; Montelle Decl. ¶ 6.  In accordance with that provision, plaintiffs promulgated a Policy for Collection of Delinquent Fringe Benefit Contributions (the "Collection Policy"), to which Atlantic Steel is bound.  *See* Montelle Decl. ¶ 7; Am. Compl. ¶ 16; Ex. G ("Collection Policy"), Dkt. 17-2. Article II of the Collection Policy provides that (1) contributions and remittance reports are due no later than 35 days after the end of a month during which the hours were worked; (2) contributions are delinquent one calendar day after the due date; (3) if Atlantic Steel fails to make contributions when due, it is liable to the Funds for interest on the unpaid contributions at an annual rate of ten percent (10%) and liquidated damages of ten percent (10%) of the amount of the unpaid contributions; and (4) if legal action is commenced, Atlantic Steel is obligated to pay all costs, including reasonable audit and accounting expenses and attorney's fees and costs. *See* Montelle Decl. ¶¶ 8-9, 12; Collection Policy, art. II(1)-(2), (4), ECF page 3.

The Collection Policy also provides that "[w]here an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms showing the employees that performed work and the hours worked, the Board may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were

submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted [and] may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit."  Montelle Decl. ¶ 10; *see also* Collection Policy, art. IV(9), Dkt. 17-2, ECF pages 9-10.

Pursuant to the CBA, plaintiffs conducted an audit of Atlantic Steel for the period July 1, 2019 through December 31, 2020 (the "Audit Period").  *See* Am. Compl. ¶ 19; Montelle Decl. ¶ 13; Declaration of Robert Castiglia ("Castiglia Decl.") ¶ 4, Dkt. 18.  The audit revealed that Atlantic Steel owed plaintiffs contributions of $142,307.98, union assessments of $8,555.31, and dues check-offs of $4,265.22 for Covered Work during the Audit Period.  Am. Compl. ¶ 20; Montelle Decl. ¶ 13; Castiglia Decl. ¶ 5.  Plaintiffs incurred audit costs of $2,090.  Am. Compl. ¶ 21; Montelle Decl. ¶ 13; Castiglia Decl. ¶ 5.  Despite demand for payment, Atlantic Steel has not paid any portion of the deficiency identified by the audit or any of the audit costs incurred. Am. Compl. ¶ 22.  Atlantic Steel also failed to submit remittance reports detailing the number of hours of Covered Work performed by its employees for January through May 2021.  Am. Compl. ¶ 23; Montelle Decl. ¶¶ 15-16.

On June 25, 2021, plaintiffs filed the Amended Complaint in this action alleging, *inter alia*, that defendant had failed to make contributions in violation of 29 U.S.C. § 1145 (First Claim) and had violated the CBA under 29 U.S.C. § 185 (Second Claim).  Am. Compl. ¶¶ 26-37. Defendant Atlantic Steel was served on June 28, 2021.  Dkt. 12.  Defendant Atlantic Steel has failed to answer the Amended Complaint or otherwise appear in this case.  On July 27, 2021, the Clerk of the Court entered a Certificate of Default.  Dkt. 14.

On September 2, 2021, plaintiffs moved for a default judgment.  Dkt. 15.  In their motion,

plaintiffs seek (1) delinquent contributions of $142,307.98 and delinquent union assessments and dues check-offs of $12,820.53 for the Audit Period; (2) estimated delinquent contributions of $55,300.95 and estimated union assessments of $3,081.85 for the period of January through May 2021; (3) interest on delinquent contributions from the Audit Period totaling $18,180.63 and interest on estimated delinquent contributions from January through May 2021 totaling $1,284.72; (4) additional interest on delinquent contributions from the Audit Period and on estimated delinquent contributions from January through May 2021 calculated at an annual rate of 10% from July 30, 2021 through the date of judgment; (5) liquidated damages for delinquent contributions from the Audit Period totaling $14,230.80 and liquidated damages for estimated delinquent contributions from January through May 2021 totaling $5,530.10; (6) audit fees and costs of $2,090; (7) attorney's fees and costs of $5,889.28; and (8) post-judgment interest at the statutory rate.  Pls.' Mem. at 16-17.

## II.    Discussion

### A.    Liability

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," a plaintiff may apply to the court for a default judgment.  *See* Fed. R. Civ. P. 55(a), (b)(2).  When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations omitted); *see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("prior to entering default

judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (internal quotations omitted)).

## ERISA and the LMRA

Plaintiffs' Amended Complaint establishes defendant's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." *Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

Here, plaintiffs allege that defendant is an "employer," and that the Funds are "employer and employee trustees of multiemployer labor-management trust funds," and "employee benefit plans" under the ERISA. Am. Compl. ¶¶ 4-5. Plaintiffs further allege that defendant was obligated to make contributions to plaintiffs pursuant to the CBA and that defendant failed to make the required contributions. *Id.* ¶¶ 6-22. These factual allegations are sufficient to establish defendant's liability under ERISA for the unpaid contributions.

Section 301(a) of the LMRA authorizes this Court to enforce the CBA. 29 U.S.C. § 185(a). Plaintiffs are "employer and employee trustees of multiemployer labor-management trust funds" under the LMRA and defendant is "an employer in an industry affecting commerce within the meaning of section 501 of the LMRA." Am. Compl. ¶¶ 4-5; *see also* 29 U.S.C. §§ 142, 186(c). Defendant was obligated to pay union assessments pursuant to the CBA and

failed to do so.  Am. Compl. ¶¶ 8, 19-24.  Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA.  *See Finkel v. Allstar Elec. Corp.*, No. 11-CV-3222, 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs.").

In light of the foregoing, this Court respectfully recommends granting default judgment on plaintiffs' ERISA and LMRA claims.

## B.    Remedies

### 1.    Damages

While the allegations of a complaint concerning liability are deemed admitted upon entry of default, allegations relating to damages are not.  *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the amount demanded.  *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July 12, 2019) (holding that a hearing is "not necessary as long as [the Court] ensure[s] that there was a basis for the damages specified in the default judgment" (alterations in original) (internal quotations omitted)); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary evidence as the basis for determining damages to be awarded in a default

judgment).

Plaintiffs have submitted in support of their motion the declarations of Keith Loscalzo, an officer of plaintiff Highway, Road and Street Construction Laborers Local Union 1010; Joseph Montelle, Administrator of the Pavers and Road Builders District Council Welfare, Pension, Annuity Funds and Local 1010 Apprenticeship, Skill Improvement and Safety Funds; and Robert Castiglia, a partner in the accounting firm Castligia, LLP, which is the auditing firm for plaintiffs. *See* Loscalzo Decl. (Dkt. 16); Montelle Decl. (Dkt. 17); Castiglia Decl. (Dkt. 18). These declarations detail the calculation of defendant's delinquent and estimated contributions and union assessments as per the CBA, as well as calculations of interest and audit costs incurred. Further, plaintiffs have provided copies of the Trust Agreements and Collection Policy, along with the reports which form the basis by which these calculations were made. *See* Montelle Decl. Ex. F ("Trust Agreement"), Dkt. 17-1; Ex. G ("Collection Policy"), Dkt. 17-2. Defendant has not submitted any opposition.

### a.    Delinquent Contributions and Union Assessments

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due." *Masino v. A to E, Inc.,* No. 07-CV-3462, 2009 WL 5184340, at *2 (E.D.N.Y. Dec. 21, 2009) (internal quotations and citations omitted). ERISA, 29 U.S.C. § 1132(g)(2), authorizes the Funds to recover:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of –

      (i) interest on the unpaid contributions, or

      (ii) liquidated damages provided for under the plan in an amount not in

excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

"Section 1332(g) thus creates a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded." *Masino*, 2009 WL 5184340, at *2 (quoting *Trs. of the Bldg. Servs. 32B-J, Pension, Health & Annuity Funds*, No. 94-CV-1358, 1995 WL 302454, at *7 (E.D.N.Y. May 8, 1995)) (internal quotations omitted).

Throughout the course of the PLA, including the Audit Period from July 1, 2019 through December 31, 2020, the parties were bound by two CBAs, which ran consecutively from July 1, 2015 through June 30, 2018, and then from July 1, 2018 through April 30, 2021. *See* 2015-18 CBA, Dkt. 16-4; 2018-21 CBA, Dkt. 16-5. The 2018-21 CBA provides that the CBA continues in effect beyond April 30, 2021 unless Atlantic Steel provides notice of termination; because Atlantic Steel has not provided notice of termination, Atlantic Steel remained bound by the CBA throughout the full course of the PLA. Loscalzo Decl. ¶¶ 7, 11-12. In relevant part, the CBAs required defendant to submit contributions and union assessments at agreed-upon rates for all employees performing Covered Work. The CBAs also stated that if an employer fails to pay contributions as provided for in the agreement, the employer shall pay, in addition to the amounts due and unpaid:

(a) Annual interest at the rate of 10% per annum;

(b) Costs and attorneys' fees;

(c) Liquidated damages in the amount of ten (10%) percent audit costs and all amounts, fees costs, penalties and disbursements provided by statute or regulation, including but not limited to the Employee Retirement Income Security

10

Act of 1974 as amended ("ERISA").

2015-18 CBA, art. IX § 5, Dkt. 16-4 at ECF page 28; 2018-21 CBA, art. IX § 5, Dkt. 16-5 at ECF page 27.

The Funds conducted an audit of defendant's books and records, specifically the "contribution reports, individual earning records, tax returns, and W-2 forms," for the Audit Period and prepared a declaration with supporting documentation in this case. *See* Castiglia Decl. ¶ 6; Ex. L ("Audit Report"), Dkt. 18-1. The report concludes that defendant owes unpaid contributions to the Funds in the amount of $142,307.98, union assessments of $8,555.31, and dues check-offs of $4,265.22. Castiglia Decl. ¶ 8.

This Court has reviewed the Audit Report (Dkts. 18-1, 17-3), the accompanying spreadsheets (Dkts. 17-4, 17-5, 17-6), and the CBAs, and, as discussed in detail below, has identified a number of significant errors that prevent this Court from accurately recalculating and recommending an award of damages to plaintiffs at this time, except for audit costs and attorney's fees. This Court instead recommends providing plaintiffs with an opportunity to recalculate and supplement their damages submission. *See Trustees of the Local 7 Tile Industry Welfare Fund et al. v. Castle Stone and Tile, Inc.*, No. 17-CV-3187, 2022 WL 2063267, at *15 (E.D.N.Y. June 8, 2002) (as the Court has warned plaintiffs' counsel's firm in the past, "this Court will not recalculate and reconstruct damages based on what evidence is presented, but instead disallow recovery as a whole. It is not the Court's job nor duty to perform such calculations in the first instance, rather the Court is to insure that such calculations presented are arithmetically sound and supported, both factually and legally.").

First, this Court has found an error in the Audit Report in the calculation of the delinquent contributions resulting in a discrepancy of $19.38. As a result of this error, all calculations stemming from the Audit Report (*i.e.*, delinquent contributions, interest, liquidated

damages, estimated delinquent contributions, estimated interest and estimated liquidated damages) are potentially incorrect.

Specifically, in the Audit Report for the period ending November 30, 2019, the auditor found employees worked **337** hours.  However, when calculating the unpaid contributions for the "(4) Pavers Annuity Fund" category, the auditor used **339.50** hours, instead of **337** hours.  *See* Dkt. 17-3 at ECF page 3; Dkt. 18-1 at ECF page 8.  For this category -- item (4) -- the auditor found a delinquent contribution of **$2,631.13** (**339.50** hours x $7.75 (contribution rate)) instead of **$2,611.75** (337.00 hours x $7.75) resulting in a difference of **$19.38**.  The amount of delinquent contributions (not including union assessments/dues check off) for month ending November 30, 2019, totals approximately **$14,494.37** (**$14,513.75** - $19.38).  Dkt. 17-5; Dkt. 17-3 at ECF page 3 ($4,987.60 + $1,600.75 + $5,294.27 + $2,611.75).  Based on this recalculation, this Court estimates that the total unpaid contributions, plus union assessments/dues check-offs for the period ending November 30, 2019, is approximately **$15,805.09** ($15,824.47 - $19.38), not **$15,824.47**.  Dkt. 17-5.

Based on the recalculation, this Court finds that the amount of delinquent contributions for the period July 2019 through August  2020, totals approximately **$142,288.60** ($142,307.98 - $19.38), not **$142,307.98**.  As set forth in detail below, as a result of the inaccurate Audit Report and the error with the amount of the November 2019 unpaid contributions, plaintiffs miscalculated the amount of interest and liquidated damages.

### b.     Interest on Contributions

Plaintiffs are entitled to prejudgment interest on the unpaid contributions.  29 U.S.C. § 1132(g)(2)(B).  ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title

26."  29 U.S.C. § 1132(g)(2)(E).

Pursuant to the CBA and Collection Policy, where an employer fails to pay contributions as required, the employer shall be responsible for "interest at the rate of ten percent (10%) per annum (calculated from the Due Date)."  Montelle Decl. ¶ 12; Collection Policy, art. II § 5, Dkt. 17-2 at ECF page 3; *see also* 2015-18 CBA, art. IX § 5(a), Dkt. 16-4 at ECF page 28; 2018-21 CBA, art. IX § 5(a), Dkt. 16-5 at ECF page 27.  Contributions are due on or before the thirty-fifth day after the close of the month in which the work was performed.  Loscalzo Decl. ¶ 17; 2015-18 CBA, art. IX § 1(b), Dkt. 16-4; 2018-21 CBA, art. IX § 1(b), Dkt. 16-5.  Plaintiffs have included spreadsheets setting forth the computations of interest on the amount of unpaid and estimated contributions through July 29, 2021, attached to Mr. Montelle's declaration.  Dkts. 17-5, 17-6.

As demonstrated in the spreadsheets and explained in Mr. Montelle's declaration, to calculate the interest on the unpaid contributions identified in the audit, plaintiffs calculated the number of days between the due date and July 29, 2021 (the date the plaintiffs' declarations were executed), to determine the number of late days for each contribution owed.  For example, July 2019 contributions were due by September 4, 2019 (35 days after July 31, 2019, the close of the month) and were 694 days late as of July 29, 2021.  Plaintiffs then calculated the daily interest rate by multiplying the contributions due per month by the ten percent (10%) annual interest rate provided for in the CBAs and Collection Policy, and then divided the full year of interest by 365 days.  For July 2019, the contribution due ($2,189.25) was multiplied by the ten percent (10%) interest rate to yield a total yearly interest of $218.93.  The yearly interest of $218.93 was then divided by 365 days to render the daily interest rate of $0.60.  The daily interest rate ($0.60) was then multiplied by the number of days the contribution was late (694), to yield the total interest

of $416.40 for the July 2019 period.  This calculation was conducted for all months contained in the audit.

Because plaintiffs rely on the amount of the delinquent contributions to calculate the interest rate, the interest amount for the period ending November 30, 2019 is incorrect.  For the month ending November 30, 2019, plaintiffs calculated the daily interest rate as **$3.98** (Dkt. 17-5).  Based on this Court's recalculation, the correct daily interest rate is approximately **$3.97** (($14,494.37 x 0.10)/365), not **$3.98**, for a total interest amount for the month ending November 30, 2019 of **$2,270.84** ($3.97 x 572 (days late)), instead of **$2,276.56** (a difference of $5.72).

The Court has identified two additional errors with plaintiffs' interest calculations.  First, the interest owed for September 2019 appears to have been calculated from **September 1, 2019**, rather than **September 30, 2019**.  Dkt. 17-5.  When calculated from September 30, 2019, the due date is November 4, 2019, and contributions are **633** days late (not **662** days), for a total interest owed of **$664.65** ($1.05 x 633 (days late)).

Second, the interest owed for March 2020 appears to have been calculated through **July 30, 2021**, not **July 29, 2021**.  *Id*.  When calculated through July 29, 2021, the interest owed for March 2021 -- 450 days late -- is **$2,866.50** ($6.37 x 450 (days late)), instead of **$2,872.87**.

Based on these recalculations, the total interest owed on unpaid contributions is likely **$18,138.09** ($416.40 + $664.65 + $1,185.94 + $2,270.84 + $979.21 + $2,213.40 + $3,330.62 + $2,866.50 + $785.40 + $1,023.07 + $1,037.51 + $108.24 + $1,256.31).

### c.    Liquidated Damages

ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C).  For

purposes of calculating liquidated damages, "delinquent contributions" consist of those contributions that were delinquent as of the day the action was filed.  *See Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995).

Here, per the CBA, when an employer fails to pay contributions as required, the employer shall be responsible for liquidated damages at a rate of 10 percent.  Montelle Decl. ¶ 12; 2015-18 CBA, art. IX § 5(a), Dkt. 16-4; 2018-21 CBA, art. IX § 5(a), Dkt. 16-5.  Based on this Court's revised numbers, defendant owes plaintiffs approximately **$142,288.60** in unpaid contributions, and estimates that the liquidated damages totals approximately **$14,228.86** ($142,288.60 (delinquent contributions) x 0.10), not **$14,230.80**.  Dkt. 17-5.

* * *

The following chart summarizes plaintiffs' damages calculations (Dkt. 17-5), and this Court's recalculation based on the analysis above:

|  | Based on Ex. J (Dkt. 17-5 at ECF page 1) | Recalculated figures |
| --- | --- | --- |
| Contributions | $142,307.98 | $142,288.60 |
| Union assessments | $12,820.51[3] | Same |
| Interest | $18,180.63 | $18,138.09 |
| Liquidated damages | $14,230.80 | $14,228.86 |
| Audit Costs | $2,090.00 | Same |
| Total | $189,629.92 | $189,566.06 |

[3] In their memorandum of law, plaintiffs request **$12,820.53** in delinquent union assessments and dues check-offs, Dkt. 20 at ECF page 21.  However, the calculations of the delinquent union assessments/dues check-offs in Ex. J (Dkt. 17-5), totals **$12,820.51** (a difference of 2 cents). Based on this Court's review of the Audit Report, it appears that **$12,820.51** is the correct number.

## 2.    Estimated  Damages

In addition to the delinquencies identified by the Audit Report, plaintiffs claim that at the time this action was commenced, Atlantic Steel had failed to report the number of hours of Covered Work performed by each of its employees for the period January through February 2020.  Montelle Decl. ¶ 15.  Since this action has been commenced, Atlantic Steel has continued to fail to report the number of hours of Covered Work performed by each of its employees.  *Id.* ¶ 16.  Therefore, according to plaintiffs, Atlantic Steel has failed to remit contributions in an unknown amount for Covered Work performed from January through May 2021.  *Id.*

According to the Collection Policy, "[w]here an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms showing the employees that performed work and the hours worked, the Board may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted. . . . The projection may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit."  Collection Policy, art. IV § 9, Dkt. 17-2 at ECF pages 9-10.

### a.    Estimated delinquent contributions

As provided under the Collection Policy, the Funds used reports submitted for the prior 12 months for which payments were made[4] in order to estimate the amount owed for Covered

---

[4] As noted by plaintiffs, "Atlantic Steel never submitted reports detailing the number of hours of

Work performed between January and May 2021. Montelle Decl. ¶ 17. Based on the contributions owed by Atlantic Steel between September 2019 and August 2020, the Funds calculated the average monthly amount owed in contributions as **$11,060.19** and the average monthly amount owed in union assessments as **$616.37**. *Id*. ¶ 18; Ex. I, Dkt. 17-4.

Upon reviewing the Funds' calculations, it appears that plaintiffs may have undervalued the average monthly contributions. Plaintiffs may have inadvertently deducted "union assessments" when calculating the average total monthly contribution.

Montelle represents that the average total monthly contribution obligation equals approximately $11,676.56 (($3,849.40 + $7,204.18 + $14,513.75 + $6,602.04 + $15,827.68 + $25,225.37 + $23,268.41 + $6,838.59 + $9,591.23 + $10,537.45 + $1,211.22 + $15,449.41)/12). *See* Dkt. 17-4 at ECF page 1 (Ex. I.); Montelle Decl. ¶ 18.[5] Mr. Montelle further states that the $11,676.56 figure represents "contributions of $11,060.19 and union assessments of $616.37." Montelle Decl. ¶ 18. However, it does not appear that the $11,676.56 figure actually included union assessments, as asserted by Mr. Montelle, and the Funds likely should not have reduced the monthly average from $11,676.56 to $11,060.19. *See* Dkt. 17-5. The figures used to calculate the $11,676.56 figure reflect *contributions only* and *not union assessments or dues check-offs*. *See, e.g.,* "Contributions" column, Dkt. 17-5.

Covered Work performed by its employees or corresponding contribution payments to the Funds. Moreover, the reports that are in the Funds' possession are unfunded and were generated by the auditors during their audit of Atlantic Steel, the recovery of which is currently the partial subject of the instant action. Therefore, the Funds are not in possession of remittance reports for which payments have been submitted in connection therewith as required by the Collection Policy. As a result, the Funds used the remittance reports generated by the auditors in the course of their audit of Atlantic Steel to conduct its delinquency estimate as these are the actual amounts due to the Funds." Montelle Decl. ¶ 17 n.1.

[5] For purposes of this discussion, this Court assumes that plaintiffs relied on the correct monthly contribution amounts, even though, as stated above, the contribution amount for the period ending November 30, 2019, was inaccurate.

If, in fact, the Funds' initial calculation as to the average total monthly contribution is correct, the Funds need to explain with more clarity how it calculated the average total monthly contribution and the average total monthly union assessments. Plaintiffs rely on Ex. I (Dkt. 17-4), yet fail to provide any explanation as to how they calculated the average monthly contribution and the average monthly union assessments. *See also* Audit Report, Dkt. 18-1 at ECF page 3 (listing monthly contribution amounts); Ex. I, Dkt. 17-4 at ECF page 1. For example, the contribution amount (adding the amounts in items (1) through (4)) for September 2019 was approximately $3,849.40 ($1,324.60 + $425.13 + $1,406.05 + $693.63), and the union assessment (adding the amounts in items (5) through (9)) was approximately $223.75 ($89.50 + $85.03 + $26.85 + $13.43 + $8.95), for a total contribution of $4,073.15 (not including the dues check-offs and PAC contribution). *See* Audit Report, Dkt. 18-1, at ECF page 6; *see also* Dkt. 17-3 at ECF page 1. The Funds erroneously believed the number $3,849.40 included "union assessments." *See* Ex. I, Dkt. 17-4 at ECF page 1. The Funds did this for all values used to calculate the total contribution, and then to calculate the overall average monthly contributions. *See id.* at ECF pages 1-2. The Funds then divided this overall average by the total of all the payment rates, including the payment rates for union assessments. *Id*. Based on these calculations, the Funds determined that only **$11,060.19** of the average was owed in contributions, and **$616.27** was owed in union assessments.

This Court conducted revised calculations using the correct total contributions (including the correct contribution amount for November 2019) for each month. This Court estimates that the average amount owed in contributions is approximately **$11,674.95** (adding the contributions for items (1)-(4) in the Funds' reports from September 2019 through August 2020, and dividing by 12), while the average owed in union assessments is approximately **$675.10** (adding the

18

contributions for items (5)-(9) in the Funds' reports from September 2019 through August 2020, and dividing by 12). As five months elapsed between January and May 2021, this Court estimates that defendant owes a total of approximately **$58,374.75** ($11,674.95 × 5) in estimated delinquent contributions and **$3,375.50** ($675.10 × 5) in estimated union assessments, for a total of approximately **$61,750.25** owed in estimated contributions and union assessments for the period of January through May 2021.

### b.    Estimated interest

To calculate the estimated interest, plaintiffs conducted the same calculations using the average estimated monthly contributions, which plaintiffs had erroneously calculated as $11,060.19, found the daily interest rate to equal approximately $3.03 ($11,060.19 × 10% ÷ 365 days), and then multiplied this per diem interest rate by the number of days that had elapsed since each payment became due. *See* Dkt. 17-6 (estimated interest and liquidated damages calculations). However, as discussed above, the correct average estimated monthly contributions is **$11,674.95**, which converts to a daily interest rate of **$3.20** ($11,674.95 × 10% ÷ 365 days), instead of $3.03. *See* Dkt. 17-6. When this corrected per diem interest rate is multiplied by the number of days that had elapsed since each payment became due, the interest on unpaid estimated contributions totals approximately **$1,356.80**.

### c.    Estimated liquidated damages

Though plaintiffs seek an award of **$5,530.10** in liquidated damages for estimated unpaid contributions, this is based on the miscalculated estimate of unpaid contributions. Montelle Decl. ¶ 27. Using the revised total estimated unpaid contributions, Atlantic Steel owes plaintiffs approximately **$5,837.48** in liquidated damages for estimated unpaid contributions ($58,374.75 × 10%).

19

### 3. Audit Costs

Plaintiffs request audit fees of **$2,090** for the audit conducted by Castiglia, LLP in March 2021.  Montelle Decl. ¶¶ 13-14; Castiglia Decl. ¶¶ 22-24.  Courts may award "such other legal or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), and regularly award reasonable audit costs.  *See, e.g.*, *Gesualdi v. Andrews Trucking Corp.*, No. 09-CV-565, 2010 WL 2292218, at *1 (E.D.N.Y. May 14, 2010), *report and recommendation adopted*, 2010 WL 2292392 (E.D.N.Y. June 3, 2010) (awarding plaintiffs $13,382.50 in audit fees).  "[R]equests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of the audit costs."  *Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc.*, No. 08-CV-3214, 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotations omitted).  "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended."  *Gesualdi v. Diversified Carting, Inc.*, No. 10-CV-2561, 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotations omitted).

Under the Collection Policy, plaintiffs are entitled to recover any expenses incurred in determining the amount of a delinquency, including reasonable audit and accounting expenses.  Montelle Decl. ¶ 12; Collection Policy, art. II § 5, Dkt. 17-2.  Here, auditors worked 22 hours to prepare the Audit Report at an hourly rate of $95.00.  Castiglia Decl. ¶ 24.  Plaintiffs' invoice reflects that the cost of the audit performed by Castiglia, LLP was **$2,090**.  Ex. L ("Audit Report"), Dkt. 18-1, at ECF page 18.  Plaintiffs have shown satisfactorily that they incurred $2,090 in audit costs.  This Court therefore respectfully recommends that plaintiffs be awarded **$2,090** in audit costs.

### 4.    Attorney's Fees and Costs

Plaintiffs seek and are entitled to an award of "reasonable attorney's fees and costs" under ERISA and the CBA.  29 U.S.C. § 1132(g)(2)(D); *Iron Workers Dist. Council of W. N.Y.*, 68 F.3d at 1505-06; *Board of Trs. of UFCW Local 342 Pension Fund v. Merrick Assoc. Mkt., Inc.*, No 11-CV-4310, 2012 WL 4049845, at *5 (E.D.N.Y. Aug. 21, 2012).  As such, plaintiffs seek to recover their attorney's fees and costs.  Pls.' Mem. at 13-15; Montelle Decl. ¶ 28; Declaration of Adrianna R. Grancio ("Grancio Decl."), Dkt. 19.

In the Second Circuit, courts calculate a "presumptively reasonable fee"[6] by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. La Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015); *see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Well-established Second Circuit doctrine requires that a fee application be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148.  "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010).  However, submissions supported by "[a]ttorney

---

[6] The "presumptively reasonable fee" is historically known as the "lodestar." *Arbor Hill*, 522 F.3d at 183.

affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees." *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991). District courts have broad discretion in determining the reasonableness of an attorneys' requested fees. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Courts often consider case-specific variables such as:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

The reasonable hourly rate should be consistent with the prevailing rates in the local legal community for similar work by lawyers of comparable experience and skill. *See Reilly v. Commerce,* No. 15-CV-5118, 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016) (quoting *Noble v. Crazetees.com*, No. 13-CV-5086, 2015 WL 5697780, at *9 (S.D.N.Y. Sept. 28, 2015)). "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-0126, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019) (citing *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)). "The 'community' is generally considered the district where the district court sits." *Id.* (citing *Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009)).

The ordinary rates for attorneys in the Eastern District of New York are "'approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates.'" *Dermansky v. Telegraph Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *7 (E.D.N.Y. Mar. 13, 2020) (quoting *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068, 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020)).  A $100 hourly fee for paralegals assisting with intellectual property cases has been found reasonable.  *See Musical Prods. Inc., v. Roma's Record Corp.*, No. 05-CV-5903, 2009 WL 3052630, at *10 (E.D.N.Y. Sept. 23, 2009) (citing *Morin v. Nu-Way Plastering*, No. 03-CV-405, 2005 WL 3470371 (E.D.N.Y. Dec. 19, 2005)).  In addition to ordinary rates, courts also consider the complexity of a case, the time it requires, and any returns an attorney might expect from litigation.  *See Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *18-*19 (E.D.N.Y. Aug. 26, 2016) (quoting *Arbor Hill*, 522 F.3d at 183).  The Court should be mindful that cases of default are "relatively simple legal matters," but Courts can still take an attorney's skill in a specialized field into account.  *Id*. at *19.

The next step in awarding attorney's fees is determining the reasonableness of the number of hours expended by counsel.  In reviewing a fee application, the court should exclude "excessive, redundant, or otherwise unnecessary" hours.  *See Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case."  *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).  If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Here, plaintiffs seek $5,334.00 in attorney's fees.  Pls.' Mem. at 13-15; Grancio Decl.;

Ex. Q ("Billing Records"), Dkt. 19-5; Default Judgment Order (Proposed), Dkt. 19-6.  Plaintiffs'

counsel, an associate at Virginia & Armbinder, LLP ("V&A"), claims 20.6 hours at $250/hour

totaling $5,150.00; and 2.3 hours at $80/hour for V&A's legal assistants totaling $184.00.  *See*

Billing Records; Grancio Decl. ¶¶ 11-12.

Plaintiffs have submitted time records that indicate the date, duration, and nature of the

work performed by their counsel.  Billing Records, Dkt. 19-5.  Ms. Grancio, a member of the

New York State bar and a 2016 graduate of St. John's University School of Law, is an associate

at V&A.  Grancio Decl. ¶ 11.  Ms. Grancio has "handled the prosecution of several ERISA

collection actions" and bills at a rate of $250 per hour.  *Id.*  In addition to Ms. Grancio, V&A

billed its legal assistants, Emily Barsamian, Julia Burstein, and Morgan Behrens at a rate of $80

per hour for work performed in connection with this matter.  *Id.* ¶ 12 n.1.

Plaintiffs' counsel and legal assistants together expended a total of 22.9 hours on this

matter, for a total fee of $5,334.00.  *Id.* ¶ 14; Billing Records.  This is a reasonable amount of

time to prepare a complaint and motion for entry of default judgment, particularly one requiring

plaintiffs' counsel to review extensive records and prepare a number of detailed declarations, as

is the case here.  *See Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity

and Apprenticeship, Skill Improvement and Safety Funds v. Nus Constracting, Inc.*, No. 17-CV-

5037, 2018 WL 4328829, at *7 (E.D.N.Y. Aug. 6, 2018) (awarding V&A fees for 20.5 hours of

work in a similar ERISA default); *Trs. of Local 7 Tile Indus. Welfare Fund v. Tuscany Tile &

Stone, Inc.*, No. 16-CV-1641, 2017 WL 3173015, at *6 (E.D.N.Y. Feb. 15, 2017), *report and

recommendation adopted*, 2017 WL 3172997 (E.D.N.Y. July 25, 2017) (awarding V&A fees for

21.5 hours of work in a similar ERISA default); *Gesualdi v. Interstate Masonry Corp.*, No. 12-

CV-0383, 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 28, 2014) (finding 23 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended ranged from 14 to 28 hours).

With respect to the hourly rate sought for Ms. Grancio's time, given the rates which courts in this district have recently awarded, this Court finds Ms. Grancio's rate to be reasonable. *See Trs. of Pavers & Road Builders Dist. Council Welfare Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Peduto Constr. Corp.*, No. 19-CV-2306, 2020 WL 9814096, at *7 (E.D.N.Y. Feb. 27, 2020) (approving Ms. Grancio's hourly rate of $250). As to Ms. Barsamian, Ms. Burstein, and Ms. Behrens, the requested hourly rate of $80 per hour for legal assistants is also reasonable. *See Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, No. 18-CV-1025, 2018 WL 6344188, at *1 (E.D.N.Y. Dec. 5, 2018) (holding $90 to be a reasonable hourly rate for the work of legal assistants); *N.Y.C. Dist. Council of Carpenters v. Trs. of New York City Dist. Council of Carpenters Welfare Fund*, No. 16-CV-3429, 2018 WL 3768586, at *5 (E.D.N.Y. July 23, 2018) (same); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Sanders Const.*, No. 13-CV-5102, 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015) (same). As such, this Court respectfully recommends a fee award based upon a rate of $250 per hour for Ms. Grancio's work, and $80 per hour for the work performed by legal assistants, for a total fee award of **$5,334.00**.

Finally, plaintiffs seek **$555.28** in costs, representing the filing fee, service fee for the Complaint, service fee for the Amended Complaint, and postage incurred in this action. Grancio Decl. ¶ 16; Billing Records at ECF page 4, Dkt. 19-5. Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotations and citation omitted).  This Court finds plaintiffs' costs to be reasonable, and respectfully recommends that plaintiffs be awarded **$555.28** in costs.

### 5.    Post-Judgment Interest

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)); *see also Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 619 (2d Cir. 1996) (prevailing party is entitled to post-judgment interest as a matter of right).  The post-judgment interest rate in ERISA actions is tied to the formula for calculation set forth in 28 U.S.C. § 1961(a), which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a); *see also Genworth Life and Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008); *Trs. of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 11-CV-709, 2015 WL 3581011, at *9 (D. Conn. June 5, 2015) ("Post-judgment interest is applicable in the ERISA context in the same manner in which it is awarded in other civil actions in which money damages are awarded.").  Moreover, post-judgment interest "shall be computed daily [from the date of judgment] to the date of payment." 28 U.S.C. § 1961(b).

Here, plaintiffs seek an award of post-judgment interest in accordance with 28 U.S.C. § 1961.  Pls.' Mem. at 15-16.  This Court finds such an award to be mandatory, and respectfully recommends awarding post-judgment interest, to be calculated in accordance with 28 U.S.C. § 1961(a) and (b) from the date of the entry of judgment to the date of payment.

**Conclusion**

For the foregoing reasons, this Court respectfully recommends (1) granting plaintiffs'

motion for default judgment against defendant on plaintiffs' ERISA and LMRA claims; (2)

awarding plaintiffs **$2,090.00** in audit costs; (3) awarding attorney's fees and costs of **$5,889.28**;

(4) awarding plaintiffs post-judgment interest; (5) denying plaintiffs' request for delinquent

contributions, union assessments and dues check-offs; (6) denying estimated delinquent

contributions and estimated union assessments; (7) denying interest on delinquent and estimated

contributions; and (8) denying liquidated damages and estimated liquidated damages.  This Court

further recommends granting plaintiffs an opportunity to submit supplemental briefing on the

issue of damages that addresses the discrepancies with plaintiffs' calculations as set forth herein.

A copy of this Report and Recommendation is being electronically served on counsel.

Further, this Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation

by overnight mail and first-class mail on defendant at its last known address and to file proof of

service on ECF by **September 19, 2022**.  Any objections to the recommendations made in this

Report must be filed with the Honorable Carol Bagley Amon within 14 days after the filing of

this Report and Recommendation and, in any event, on or before **September 29, 2022**.  *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the

right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*)

(discussing waiver under the former ten-day limit).

The Clerk is requested to enter this Report and Recommendation into the ECF system.

**SO ORDERED**

Dated:  Brooklyn, New York
        September 15, 2022

<div style="margin-left: 40%">

s/ James R. Cho
James R. Cho
United States Magistrate Judge

</div>